UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

FRANCISCO C.,

                    Plaintiff,

    v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                    Defendant.

NO:  1:19-CV-03038-FVS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

        BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 10, 11.  This matter was submitted for consideration without oral

argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

_____

[1] Andrew M. Saul is now the Commissioner of the Social Security

Administration.  Accordingly, the Court substitutes Andrew M. Saul as the

Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P.

25(d).2

ORDER ~ 1

represented by Special Assistant United States Attorney Jacob Phillips. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is denied and Defendant's Motion, ECF No. 11, is granted.

## JURISDICTION

Plaintiff Francisco C.[2] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on August 23, 2015, alleging an onset date of August 23, 2014, in both applications. Tr. 207-15, 218-23. Benefits were denied initially, Tr. 128-36, and upon reconsideration, Tr. 138-50. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on November 7, 2017. Tr. 37-55. On January 5, 2018, the ALJ issued an unfavorable decision, Tr. 12-30, and on December 31, 2018, the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

Plaintiff was born in 1975 and was 42 years old at the time of the hearing. Tr. 45. He went to school through the eleventh grade. Tr. 45. He attended two years of community college for information technology but did not complete the certificate. Tr. 45. He has worked as a forklift driver for 15 years. Tr. 52-53.

Plaintiff had his first two seizures on the same day in August 2015. Tr. 353-79. Plaintiff takes medication for his seizures, but testified he still has one or two seizures a week and that he has "learned to live with it." Tr. 47-48. Plaintiff testified he tore both rotator cuffs. Tr. 54. He had surgery on his right shoulder because it was worse than the left. Tr. 54. He testified he has limited range of motion, as he cannot lift his right arm over his shoulder and cannot pick up anything heavy. Tr. 54. He is in constant pain. Tr. 54. Plaintiff testified he is also prevented from working by back pain that radiates to his left leg. Tr. 59.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must

ORDER ~ 3

consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER ~ 4

substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe

than one of the enumerated impairments, the Commissioner must find the claimant

disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the

claimant is capable of performing past relevant work, the Commissioner must find

that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the

claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this

determination, the Commissioner must also consider vocational factors such as the

claimant's age, education and past work experience. 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since August 23, 2015, the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: migraine, seizure disorder, degenerative disc disease, obesity, and shoulder dysfunction. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> He can never climb ladders, ropes, or scaffolds, work at unprotected heights or in proximity to hazards, such as heavy machinery with dangerous moving parts. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant also can occasionally reach overhead, but he cannot push, pull, or perform

precision work overhead.  In addition, the claimant can perform work in which concentrated exposure to loud noise is not present.

Tr. 19.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 23.  At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs existing in significant numbers in the national economy that Plaintiff can perform such as counter clerk, tanning salon attendant, or conveyer line bakery worker.  Tr. 24.  Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 23, 2015, through the date of the decision.  Tr. 24.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated Plaintiff's symptom testimony;

2.    Whether the ALJ properly evaluated the listings;

3.    Whether the ALJ made a legally sufficient RFC finding;

4.    Whether the ALJ made a proper step five finding.

ECF No. 10 at 2.

## DISCUSSION

ORDER ~ 8

## A. Symptom Testimony

Plaintiff contends the ALJ improperly rejected his symptom testimony. ECF No. 10 at 14-21. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social

Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ concluded the medical findings do not to support the allegation of disability and an inability to perform any work. Tr. 21. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

For example, the ALJ noted that the record regarding Plaintiff's shoulder impairment indicates Plaintiff's right rotator cuff was torn and left shoulder was injured during his first seizure in August 2015. Tr. 21, 310, 408. At that time, his right upper extremity had 2/5 abduction and the left upper extremity muscle strength

was 5/5. Tr. 21, 474. Plaintiff had right rotator cuff surgery in October 2015 and at a follow up appointment later that month his pain was 1/10. Tr. 21, 427. In December 2015, a treating provider noted Plaintiff's right shoulder was "frozen" with significantly decreased range of motion of zero degrees abduction and 15-20 degrees anterior and posterior movement, plus the left shoulder showed significant pain with abduction to 15 degrees. Tr. 21, 408. Plaintiff was encouraged to talk to his surgeon about physical therapy. Tr. 408. Thereafter, Plaintiff saw his orthopedic surgeon, Antoci Valentin, M.D., who noted limited range of motion and strength in both shoulders and prescribed physical therapy. Tr. 435, 438.

By June 2016, Plaintiff still complained of pain while lifting the right arm, but Dr. Valentin found only mild limited range of motion and mild weakness in the right shoulder. Tr. 22, 627. Plaintiff was not attending physical therapy or taking pain medication. Tr. 22, 627. Similarly, in August 2017, Dr. Valentin noted mild limited range of motion and mild weakness in the right shoulder although Plaintiff complained of shoulder pain and popping. Tr. 623. Dr. Valentin diagnosed bursitis, injected the shoulder, and encouraged Plaintiff to refrain from heavy lifting or activity for four to six weeks. Tr. 623. Thus, the ALJ reasonably interpreted these findings to indicate that while Plaintiff has some shoulder limitations, they are not consistent with the level of limitation alleged.

Second, the ALJ found Plaintiff's failure to follow up with treatment regarding his seizures suggests his symptoms do not cause the level of impairment alleged. Tr. 21-22. If a claimant complains about disabling symptoms but fails to

ORDER ~ 11

seek treatment, or fails to follow prescribed treatment, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The ALJ noted Plaintiff's testimony that he experienced one to two seizures a week but observed he kept taking his medication without seeing his doctor for over a year. Tr. 22, 49-51. Plaintiff admitted, "I probably should be getting checked more." Tr. 22, 49. The ALJ reasonably inferred that Plaintiff's failure to follow up regarding his seizures means that he was not experiencing seizures or side effects from medication to the degree alleged. Tr. 22.

Plaintiff cites treatment records indicating that Plaintiff tried several different medications, suggesting that Plaintiff was not taking medications without following up. ECF No. 10 at 20. However, Plaintiff cites only three office visits with Dr. Lee after his initial visit in August 2015. ECF No. 10 at 20 (citing Tr. 412 (March 2016), 483 (September 2015), 486 (October 2015)). This illustrates the ALJ's point that if Plaintiff experienced seizures once or twice a week after the March 2016 visit, it would be reasonable to expect that he would visit his treating neurologist between March 2016 and the October 2017 hearing.[3] Tr. 22. Based on that observation, the

---

[3] It is also noted that in March 2016, Dr. Lee told Plaintiff to follow up in six weeks. Tr. 414.

ALJ made a reasonable inference that Plaintiff's seizures are not as severe or frequent as alleged.

Plaintiff also contends that he has continued to take his medications despite not seeing Dr. Lee after March 2016. ECF No. 10 at 20. However, notes regarding emergency room visits in March 2016, May 2016, and July 2016 all suggest noncompliance with medication triggered seizures. Tr. 414 (Dr. Lee noted Plaintiff forgot to take his pill and had a breakthrough seizure), 452 (he hasn't been taking medication consistently, he takes about half his recommended dosage, "noncompliance" noted), 684 (he was out of seizure medication).

Plaintiff further contends the ALJ misstated his testimony and improperly discredited him on that basis. ECF No. 10 at 17. Plaintiff testified that when he first had seizures, his fiancé would take him to the emergency room, but stopped doing so because, "basically, Dr. Lee told her not to worry, let it pass." ECF No. 10 at 19 (citing Tr. 46). The ALJ observed it was unlikely that Plaintiff's neurologist would tell him to "ignore" seizures. Tr. 22. Plaintiff asserts he meant that he stopped going to the emergency room for seizures pursuant to Dr. Lee's instructions, not that he "ignored" them. ECF No. 10 at 19 (citing Tr. 476, 483). Even if the ALJ misinterpreted this statement, the ALJ's other observations regarding follow through with treatment are supported by substantial evidence. An error is harmless where the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Molina*, 674 F.3d at 1115; *Carmickle v.*

*Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ also noted that in August 2017, Plaintiff indicated he did not attend physical therapy and was taking no pain medication. Tr. 21, 623. Plaintiff asserts he had difficulty finding a physical therapy clinic that would take his insurance. Tr. 57, 59, 436. Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The ALJ should have considered this excuse for Plaintiff's failure to pursue physical therapy and to the extent the ALJ considered Plaintiff's lack of physical therapy, the ALJ erred; however, the error is harmless. *See Carmickle*, 533 F.3d at 1162-63.

Next, the ALJ reasonably considered Plaintiff's lack of pain medication. Tr. 21. Plaintiff testified that he feels shoulder pain every day, yet by August 2017, he was not taking any pain medication. Tr. 21, 623, 627. This reasonably leads to the conclusion that he was not suffering a disabling level of pain. Plaintiff testified that he does not like to take narcotics, Tr. 58, but when a lack of treatment is attributable to personal preference, it is reasonable for the ALJ to conclude that the level of or frequency of treatment is inconsistent with the level of complaints. *See Molina*, 674 F.3d at 1114. Furthermore, as Defendant notes, Plaintiff was prescribed narcotics without expressing concern and reported being out of pain pills prescribed for an elbow injury in July 2017. ECF No. 10 at 5 (citing Tr. 653, 661, 665, 667, 669-72,

675-77).  The ALJ reasonably considered Plaintiff's lack of pain medication in evaluating the severity of his shoulder pain complaints.

## B.    Residual Functional Capacity

Plaintiff contends the ALJ erred in assessing his residual functional capacity. ECF No. 10 at 7-10.  The residual functional capacity is "the most [a claimant] can still do despite his limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this finding, the ALJ need only include credible limitations supported by substantial evidence. *Batson*, 359 F.3d at 1197.  Plaintiff asserts that the ALJ failed to recognize the degree of shoulder limitation which should have been included in the RFC finding.  ECF No. 10 at 8.

Plaintiff contends the one-time finding that Plaintiff had a "frozen" shoulder in December 2015 "compelled disability."  ECF No. 10 at 9.  As discussed *supra*, it was noted in December 2015 that Plaintiff had significantly decreased range of motion of zero degrees abduction and 15-20 degrees anterior and posterior movement, and the left shoulder showed significant pain with abduction to 15 degrees.  Tr. 21, 408.  However, Dr. Valentin, the treating specialist, later found mild limited range of motion and mild weakness in the right shoulder.  Tr. 22, 623, 627.  Furthermore, Dr. Valentin opined only that Plaintiff should avoid heavy lifting and activity for four to six week, and the reviewing physicians opined that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, with occasional overhead reaching on both sides and unlimited handling and fingering.  Tr. 94-97, 120-22.  Notwithstanding, the ALJ included additional

ORDER ~ 15

limitations in the RFC based on a longitudinal view of the record, including occasional overhead reaching and no overhead pushing, pulling, or precision work. Tr. 22-23.

The ALJ acknowledged Plaintiff's good work history and his desire to return to work at his previous job which he enjoyed. Tr. 22. The ALJ included limitations in the RFC reasonably supported by the record. To the extent the evidence conflicts or could be interpreted differently, it is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## C.    Step Three

Plaintiff contends the ALJ failed to properly assess listing 1.02B for major dysfunction of a joint, listing 11.02B for migraines, and listing 11.02A for seizures. ECF No. 10 at 10-14. At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the listings. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525, 416.925. An impairment "meets" a listing if it meets all of the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990);

ORDER ~ 16

*Tackett,* 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan,* 493 U.S. at 530; *Tackett,* 180 F.3d at 1099. An unlisted impairment or combination of impairments "equals" a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. §§ 404.1526(b), 416.1526(b).

### 1. *Listing 1.02B – Major Dysfunction of a Joint*

Listing 1.02B is characterized by (1) gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of or abnormal motion, with imaging showing joint space narrowing, bony destruction, or ankylosis; and (2) involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in an inability to perform fine and gross movements effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02B. The inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B(2)(c). An extreme loss of function means a very serious interference with the ability to independently initiate, sustain, or complete activities. *Id.* To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. *Id.* Examples of inability to perform fine and gross movements effectively include the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and

ORDER ~ 17

handle papers or files, and the inability to place files in a file cabinet at or above waist level.  20 C.F.R. Pt. 404, Subpt. P. § 1.00B(2)(c).

The ALJ found Plaintiff's shoulder joint dysfunction does not meet listing 1.02B.  Tr. 19.  The ALJ concluded that although there is involvement of one major peripheral joint in each upper extremity since each of Plaintiff's shoulders are affected, the impairments do not result in an inability to perform fine and gross movements effectively.  Tr. 19.  The ALJ found that Plaintiff is capable of functions listed in 1.00B(2)(c) such as reaching, pushing, pulling, grasping and fingering to carry out activities of daily living.  Tr. 19.

Plaintiff contends he is limited in functioning by the inability to reach overhead and decreased range of motion in both upper extremities.  ECF No. 10 at 11.  However, as Defendant observes, no medical provider or reviewer found that Plaintiff had an "extreme loss of function" in both arms.  ECF No. 11 at 16. Plaintiff's treating orthopedic surgeon restricted plaintiff from heavy lifting for four to six weeks, Tr. 23, 625, and reviewing physicians, Greg. Saue, M.D., and James Irwin, M.D., opined that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, with occasional overhead reaching on both sides and unlimited handling and fingering.  Tr. 94-97, 120-22.

Plaintiff observes that the RFC finding includes limitations of occasional overhead reaching and no overhead pushing, pulling, or precision work and asserts this is inconsistent with the ALJ's step three finding that he is capable reaching, pushing, pulling, grasping and fingering.  ECF No. 10 at 11; Tr. 19.  However,

ORDER ~ 18

there is no indication that Plaintiff has any limitations in grasping and fingering, and the reaching, pushing and pulling limitations only apply to overhead functions. None of the examples of daily activities which apply to listing 1.02B reasonably require overhead use of the shoulders. *See* 20 C.F.R. Pt. 404, Subpt. P. § 1.00B(2)(c). Thus, the ALJ reasonably concluded that some overhead restrictions do not qualify as "extreme loss of function" or "very serious interference" with daily activities.

Plaintiff contends his daily activities are affected by loss of function in his shoulders. ECF No. 10 at 11. Plaintiff indicates he needs help dressing, bathing, using the toilet, and getting out of bed, ECF No. 10 at 11 (citing Tr. 248, 266), but he also indicated he can care for his hair, shave, feed himself, make sandwiches or soup and can do some household chores. Tr. 248-49. While Plaintiff has some limitations, the record reasonably supports the ALJ's conclusion that Plaintiff is capable of such activities as reaching, pushing, pulling, grasping and fingering to carry out activities of daily living. The court must uphold the ALJ's decision when it is not based on legal error and is supported by substantial evidence. *Tackett*, 180 F.3d at 1097.

2.    *Listings 11.02A and 11.02B – Seizures*

Listings 11.02A for generalized tonic-clonic seizures is met by documentation of a detailed description of a typical seizure, occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02A. Similarly, listing 11.02B

for dyscognitive seizures is met by documentation of a detailed description of a typical seizure, occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02B. The ALJ found that Plaintiff's seizures do not meet listing 11.02A or 11.02B for epilepsy because the evidence does not show generalized tonic-clonic seizures or dyscognitive seizures occurring at the required frequencies.[4] Tr. 18.

Plaintiff contends his seizures meet listing 11.02A because he testified that he has tonic-clonic seizures as often as two per week or as few as two per month (Tr. 65-66). However, the regulations provide that in evaluating whether an impairment medically equals a listing, a claimant's allegations of symptoms will not be substituted for signs or laboratory findings. 20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3). Further, as discussed *supra*, the ALJ reasonably found that the Plaintiff's failure to follow up with his doctor regarding seizures indicates that he was not having seizures to the extent indicated in his testimony. Tr. 22. Thus, the ALJ's finding regarding listing 11.02A is supported by substantial evidence.

Plaintiff also contends he meets listing 11.02B for dyscognitive seizures based on his report of seizures on December 12 and December 16, 2015, and January 5, 2016 (Tr. 263). ECF No. 10 at 13. However, Defendant notes a September 2017 medical record indicating that Plaintiff had a total of five seizures

---

[4] The ALJ also found listings 11.02C and 11.02D are not met, Tr. 18; Plaintiff does not challenge that finding.

between August 2015 and December 2016[5]. ECF No. 11 at 12 (citing Tr. 634).

Plaintiff suggests this record is less reliable because it is an ER note regarding

Plaintiff's medical history, but there is no basis for that conclusion. ECF No. 12 at

9. Plaintiff also acknowledges that seizures in March and May 2016 involved

noncompliance with medication, ECF No. 10 at 14 (citing Tr. 414, 453), and the

Court notes that additional record indicating a seizure occurred when Plaintiff was

out of medication in July 2016. Tr. 682-83 (out of Depakote 1.5 weeks). The

record does not support a finding of seizures at least once a month for at least three

consecutive months despite adherence to prescribed treatment. Thus, the ALJ's

conclusion that Plaintiff does not meet the frequency requirement of listing 11.02A

or 11.02B is reasonable and based on substantial evidence.

### 3. *Listing 11.02B – Migraines*

As the ALJ noted, there is no listing for migraines. Tr. 18. Plaintiff

contends his headaches equal listing 11.02B for dyscognitive seizures. ECF No.

10 at 12-13. An unlisted impairment or combination of impairments is equivalent

to a listed impairment if medical findings equal in severity to all of the criteria for

---

[5] Plaintiff points out a May 2016 record conflicts with the September 2017 record, since it also indicates Plaintiff had five seizures since August 2015. ECF No. 12 at 9 (citing Tr. 453). Regardless of which record is correct, the frequency requirement of the listing is not established by the record.

the one most similar listed impairment are present. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. §§ 404.1526(b), 416.926(b). As noted *supra*, listing 11.02B requires documentation of a detailed description of a typical seizure (or equivalent for migraines), occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02B.

Although the ALJ did not specifically discuss whether migraines equal listing 11.02B, the ALJ found that Plaintiff does not have an impairment that equals a listing, either alone or in combination with other impairments. Tr. 19. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. An ALJ's failure to consider equivalence may not be reversible error when the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir.2001) (distinguishing *Marcia v. Sullivan,* 900 F.2d 172 (9th Cir.1990)).

As Defendant observes, Plaintiff did not list migraines in his disability paperwork, mention disabling migraine symptoms in disability reports, or mention them at the hearing except to say that after a seizure he gets a headache. ECF No. 110 at 14; Tr. 66-67, 239, 270, 280. Furthermore, Plaintiff did not assert that his migraines equal listing 11.02B at the hearing or before the Appeals Council. Tr.

ORDER ~ 22

44-45, 204-05.  Plaintiff essentially argues that because listing 11.02B is the closest listing for equivalency for migraines, the ALJ had an inherent obligation to not only consider it but to discuss it in detail.  ECF No. 12 at 7.  However, an ALJ does not have an obligation to discuss medical equivalency *sua sponte* and does not err in failing to do so when the issue has not been raised.  *See Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020) (citing *Burch*, 400 F.3d at 683).  Given all of these factors, the ALJ was not required to specifically explain why Plaintiff's migraines do not meet a listing.

Furthermore, even if the ALJ should have discussed listing 11.02B with regard to migraines, the record does not reasonably establish that Plaintiff's headaches occurred at least once a week for at least three consecutive months in order to equal the listing.  ECF No. 10 at 12.  The record indicates that in September 2015, Plaintiff complained of headaches lasting one to two days for up to three to four days of the week and he was diagnosed with migraines.  Tr. 481.  Thereafter, although headaches were mentioned elsewhere in the record, there was no indication of frequency.  *See e.g.*, Tr. 412, 452, 484, 651, 658.  In June 2016, Plaintiff reported he gets a headache whenever he has a seizure, but as discussed *supra*, the ALJ reasonably found that listing-level seizure frequency is not established by the record.  Tr. 522-23, 526.   Similarly, the frequency required for migraines to equal the listing is also not established by the record.  Thus, the ALJ's step three finding is legally sufficient.

**D.    Step Five**

ORDER ~ 23

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to prove that, based on the claimant's residual functional capacity, age, education, and past work experience, he can do other work. *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987); 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 960(c). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The vocational expert may testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101.

Here, the vocational expert testified that representative occupations consistent with the RFC include counter clerk with 100,000 jobs in the national economy, tanning salon attendant with 20,000 jobs in the national economy, and conveyor line baker worker with 200,000 jobs in the national economy. Tr. 24, 70-71. On this basis, the ALJ concluded there are a significant number of jobs available in the national economy that Plaintiff could perform. Tr. 24.

Plaintiff contends the vocational expert did not explain the basis for the number of jobs for the occupations identified. ECF No. 10 at 5. A vocational expert's "recognized expertise provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). Plaintiff cites his own exhibit including "DOT Estimates" and "Job Browser Pro" printouts to challenge the job data contained in the vocational expert's testimony. ECF No.

10 at 5-7; ECF No. 10-1.  However, "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel."  *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).  Plaintiff did not challenge the vocational expert's testimony regarding the job data at the hearing.  Tr. 68-73.  Thus, this line of argument is waived.

Furthermore, Courts considering similar arguments have found that lay assessment of raw data does not rebut a vocational expert's opinion.  *Kirby v. Berryhill*, No. SA CV 18-497-E, 2018 WL 4927107, at *5 (C.D. Cal. Oct. 10, 2018) (citing e.g., *Reguero v. Berryhill*, 2018 WL 1804678, at *5-6 (E.D. Cal. Apr. 13, 2018) (ALJ was entitled to rely on vocational expert's estimation of job numbers and appropriately resolved any ambiguity in the expert's testimony); *Munroe v. Colvin*, 2014 WL 6660369, at *5, 9-10 (N.D. Cal. Nov. 24, 2014) (rejecting argument that vocational expert's estimated 500,000 garment sorter jobs should have been reduced to only 650 jobs, representing a subset of jobs within a larger category of "production worker" occupations; court observed that the plaintiff was not a vocational expert and there was no indication she was qualified to assess the data); *see also Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a source listed in 20 C.F.R. §§ 404.1566(d), 416.966(d), and the data therefrom served only to show

that evidence can be interpreted in different ways); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.") (internal footnote omitted); *Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (noting cases that "uniformly rejected" arguments that Job Browser Pro data undermined vocational experts' testimony)).  Based on the foregoing, the ALJ's reliance on the testimony was appropriate and the step five finding was supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 11, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 31, 2020.

_____*s/ Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge